IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KERRY DEON GOSS
ADC #104522                                                                           PLAINTIFF

V.                                    3:08CV00197 JTR

DALE HAAS,
County Judge of Craighead County, et al.                                        DEFENDANTS

## MEMORANDUM OPINION[1]

Plaintiff, who is no longer incarcerated, has commenced this *pro se* § 1983 action alleging that Defendants violated his constitutional rights while he was confined at the Craighead County Detention Center ("CCDC"). *See* docket entries #2 and #6. Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Indisputable Material Facts. *See* docket entries #37, #38, and #39. Plaintiff has not filed a Response to the Motion for Summary Judgment or a Statement of Disputed Facts, and the time for doing so has expired.

### I. Admitted Facts[2]

On April 12, 2008, Plaintiff arrived at the CCDC, which has an "in-duct UVC lighting

---

[1] On March 5, 2009, the parties consented to proceed before a United States Magistrate Judge. *See* docket entry #26.

[2] On June 15, 2009, the Court issued an Order giving Plaintiff thirty days to file a Response to Defendants' Motion for Summary Judgment and a Statement of Disputed Facts. *See* docket entry #40. Importantly, the Court advised Plaintiff that if he failed to timely do so, the facts set forth in Defendants' summary judgment papers would be deemed admitted, pursuant to Local Rule 56.1(c). *Id.* As of the date of this Memorandum Opinion, Plaintiff has failed to comply with the Court's June 15, 2009 Order, and the time for doing so has expired. Accordingly, the following facts are deemed admitted.

system" that is used to prevent the spread of tuberculosis ("TB"). *See* docket entry #39, Ex. 6 at ¶ 44. On May 27, 2008, the Craighead County Health Department ("Health Department") notified the CCDC that Stanley Climer, a former CCDC detainee, had tested positive for active TB.[3] *See* docket entry #39. Although Climer had been confined with Plaintiff at the CCDC from April 12, 2008, to May 22, 2008, the two men were *never* housed together. *Id.*

Immediately thereafter, the CCDC had all detainees and employees tested for TB. *Id.* On June 2, 2008, the CCDC received the test results indicating that 27 detainees (but not Plaintiff) had latent TB. *Id.* Importantly, no detainees or employees had active TB. *Id.* Soon thereafter, the 27 infected individuals received chest x-rays, which confirmed that their TB was latent, and not active. *Id.* Thereafter, Plaintiff remained housed with two detainees, who had latent TB. *Id.* However, according to the Dr. Sifford's uncontested Affidavit, it is impossible to contract TB from an individual with latent TB. *See* docket entry #39, Ex. 6 at ¶¶ 6 and 20.

On October 21, 2008, the CCDC administered a second TB test to all CCDC detainees and employees. *See* docket entry #39. On October 23, 2008, Plaintiff was transferred to the Arkansas Department of Correction ("ADC"). *Id.* On the same day, the CCDC received notice that four more detainees, including Plaintiff, had latent TB. *Id.* The test results were forwarded to the ADC, which

---

[3] Defendants have produced the *uncontested* Affidavit of Dr. Mark Sifford, a pulmonary critical care physician who has been a "tuberculosis doctor" with the Craighead County Health Department since 1991. *See* docket entry #39, Ex. 6. In his Affidavit, Dr. Sifford explains that people with *latent* TB do not have any symptoms and are *not* contagious. *Id.* In contrast, people with *active* TB have symptoms and they *are* contagious. *Id.* An *untreated* person with active TB can spread the disease by coughing, sneezing, speaking or otherwise releasing microscopic droplets of bacteria into the air. *Id.* A person who inhales the droplets may contract latent or active TB. However, some people who inhale the droplets do not contract either form of the disease because their "immune system immediately destroys the germs and clears them from [the] body." *Id.* at ¶ 12. Importantly, TB is "not especially easy to catch," and a person "must spend an extended period of time with someone with untreated, active TB to become infected." *Id.* at ¶¶ 9-10.

independently confirmed Plaintiff's diagnosis for latent TB. *Id.* Soon thereafter, the ADC gave Plaintiff a nine-month course of "prophylactic" medications designed to prevent him from contracting active TB. *Id.* Plaintiff has not reported any symptoms of active TB. *Id.*

## II. Discussion[4]

In order to establish an unconstitutional conditions of confinement claim, a prisoner or detainee must demonstrate that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, defendants actually knew of but deliberately disregarded that substantial risk of harm.[5] *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)); *Massik v. N. Cent. Corr. Facility*, 136 F.3d 580, 581 (8th Cir. 1998).

Based upon the *admitted* facts, the Court concludes that Defendants were not deliberately indifferent to the substantial risk that Plaintiff might contract TB while confined at the CCDC for several reasons. First, Defendants used an in-duct UVC lighting system to prevent the spread of TB.

Second, Plaintiff has failed to produce *any evidence* suggesting that Defendants were

---

[4] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex*, 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file" that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

[5] During his confinement at the CCDC, Plaintiff was a pretrial detainee and, later, a convicted prisoner awaiting transport to the ADC. *See* docket entry #39. A pretrial detainee's rights are governed by the Due Process Clause of the Fourteenth Amendment, while a convicted prisoner's rights are governed by the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). Nevertheless, the legal analysis is the same under both constitutional provisions. *Id.*

deliberately indifferent in failing to detect that Climer had active TB. Importantly, although they were both in the CCDC for forty days, Plaintiff was *never* housed with Climer. Further, Dr. Sifford states, in his *uncontested* Affidavit, that: "It would be highly unlikely for [Plaintiff] to have contracted TB from his brief exposure to active TB at the Craighead County Detention Center." *See* docket entry #39, Ex. 6 at ¶ 25.

Finally, as soon as Defendants became aware that Climer (who was no longer at the CCDC) had active TB, they immediately tested all CCDC detainees and employees. Defendants then gave chest x-rays to the 27 inmates, who had tested positive, to confirm that they had *non-contagious*, latent TB. Despite the *unsupported* allegations made in the Complaint, Plaintiff could *not* have contracted TB by being housed with the two detainees who had latent TB. In fact, Dr. Sifford concludes that: (1) "[a]ll preventative, precautionary and necessary medical attention was given to all inmates and staff at the [CCDC] in response to the information" that Climer had active TB; and (2) there was "nothing more" that the CCDC "could have done to have prevented or avoided the possible spread of TB in the Detention Center." *Id.* at ¶¶ 22-23. Although he has been given the opportunity to do so, Plaintiff has failed to produce *any* evidence to refute Dr. Sifford's conclusions. Accordingly, it is clear that Defendants are entitled to summary judgment.

### III. Conclusion

IT IS THEREFORE ORDERED THAT:

1.     Defendants' Motion for Summary Judgment (docket entry #37) is GRANTED, and this case is DISMISSED, WITH PREJUDICE.

2.     The Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum Opinion and the accompanying Judgment would not be taken in good

faith.

    Dated this **23rd** day of July, 2009.

                                                   */s/ J. Thomas Ray*
                                        UNITED STATES MAGISTRATE JUDGE